DOUGLAS C. KANE, S.B. NO. 198934
LAW OFFICE OF DOUGLAS KANE
**121 Jewell Street
Santa Cruz, CA 95060
(831) 459-8000**

**Attorney for Plaintiff KEVIN HALPERN**

**UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION**

| | |
|---|---|
| **KEVIN HALPERN,** | **CASE NO. _____** |
| **Plaintiff,** | **COMPLAINT FOR DAMAGES** |
| **v.** | **DEMAND FOR JURY TRIAL** |
| **CITY OF SANTA CRUZ, ABRAHAM RODRIGUEZ, DAVID PERRY, and DOES 1 through 20, inclusive**, | |
| **Defendants.** | |

## I. Jurisdiction

1.      This case is brought pursuant to 42 U.S.C. § 1983.  Jurisdiction is based upon 28 U.S.C. §§ 1331 and 1343.  The court also has pendent jurisdiction over the state claims, and supplemental jurisdiction over defendants pursuant to 28 U.S.C. § 1367.

## II. Venue

2.      The claims alleged herein arose in the County of Santa Cruz, California.  Therefore, venue lies in the Northern District of California.  28 U.S.C. § 1391(b)(2).

## III. Intradistrict Assignment

3.      This case arose in Santa Cruz County and pursuant to Civil L.R. 3-2(b) and (d) should be assigned to the San Jose Division.

## IV.  Introduction

4.     This is a complaint for damages based upon injuries caused to plaintiff when defendants took plaintiff into custody and handcuffed and detained him without reasonable cause to believe that he had committed any criminal offense.  Defendants then paraded plaintiff through the emergency room of Dominican Hospital like a common criminal, but then released plaintiff without conducting the blood and urine tests for controlled substances that supposedly were the justification for bringing plaintiff to the hospital in the first place.  Plaintiff proceeded to take the tests at his own expense in order to conclusively demonstrate that he was not under the influence of any controlled substances.  Plaintiff has suffered extreme harm to his psyche as a result of his unlawful detention and arrest.  He has also suffered significant physical injury as a result of defendant's unreasonable use of excessive force.

## V.  Parties

5.     Plaintiff KEVIN HALPERN was at all times mentioned a resident of Santa Cruz County, California.  He is currently a resident of New York City.

6.     Defendant ABRAHAM RODRIGUEZ (hereinafter "RODRIGUEZ") was at all times mentioned herein a Police Officer employed by the City of Santa Cruz, and acting in the course and scope of such employment.

7.     Defendant DAVID PERRY (hereinafter "PERRY") was at all times mentioned herein a Police Officer employed by the City of Santa Cruz, and acting in the course and scope of such employment.

8.     Defendant CITY OF SANTA CRUZ (hereinafter "CITY") is a governmental entity which at all times mentioned herein selected, hired, trained, supervised, employed and disciplined Defendants RODRIGUEZ and PERRY, and DOES 1-20, inclusive, all of whom were at all times mentioned herein acting in their capacities as law enforcement agents of Defendant CITY.

9.     Defendants DOES 1-20, inclusive, are each responsible in some manner for the injuries alleged herein.  The true names and capacities of defendants DOES 1-

20 are presently unknown to plaintiffs.  Plaintiffs are informed and believe and therefore allege on information and belief, that each of them is responsible in some manner for the injuries alleged herein.  Plaintiffs therefore sues Defendants DOES 1-20, by such fictitious names and will seek leave to amend this complaint to add their true names when the same have been ascertained.

10.    At all times mentioned herein, and in doing all of the things described herein, the individual Defendants RODRIGUEZ and PERRY and DOES 1-20, inclusive, were acting under color of law, to-wit, under color of statutes, ordinances, regulations, policies, customs and usages of the CITY.  They are being sued both in their individual and official capacities.

## VI.  Agency

11.    Plaintiff is informed and believes, and thereupon alleges, that at all times mentioned herein, unless otherwise alleged, Defendants, and each of them, including DOES 1-20, inclusive, and each of them, were the agents, servants, employees, and/or co-conspirators of their co-defendants, and were, as such, acting within the course, scope and authority of said employment and/or agency, and/or in furtherance of said conspiracy, and with the knowledge, consent, permission and/or ratification of each other, and that each and every Defendant, as aforesaid, when acting as a principal, was negligent in the selection, hiring training, supervision and discipline of each and every other defendant as an agent, servant, and/or employee.

## VII.  Facts

12.    Plaintiff is a 26-year-old white male.  Other than the incident that serves the basis for this claim, he has never been arrested.  He is a graduate of an Ivy League university and has never been involved in any way with any kind of substance abuse.

13.    Early in the morning on January 8, 2002, Plaintiff was scheduled to leave on a flight to New York from San Jose International Airport, so he could visit his family there.  A friend of his who was going to drive him to the airport was to pick him up at

his girlfriend's house.  Unfortunately, Plaintiff's girlfriend decided to break up with him at this time.  Plaintiff therefore tried to contact his friend who was going to drive him to the airport on his friend's cell phone, but the friend did not answer the phone.  After several attempts to call him, Plaintiff and his ex-girlfriend agreed that Plaintiff should start walking towards his friend's house because she wanted to go to sleep.  After the Plaintiff left, because of the cold weather, Plaintiff jogged occasionally, but had a backpack with contents that included three heavy communication technology books that prevented him from jogging the full way to his friend's house.  Therefore, his temperature and pulse were somewhat elevated.  Plaintiff reached the gas station at the corner of Soquel and Frederick and again called his friend to pick him up.  Plaintiff reached his friend this time and the friend told Plaintiff to wait on the corner.

14.  A bad situation was rendered infinitely worse with the arrival on the scene of Santa Cruz Police Officers RODRIGUEZ and PERRY.  According to his report, RODRIGUEZ saw Plaintiff waiting at the intersection at approximately 1:28 a.m. on January 8, 2002, and pulled into the Beacon gas station to investigate.  Plaintiff approached RODRIGUEZ to explain why he was waiting at the intersection.  He also informed the officer that he was upset because his girlfriend had just broken up with him.

15.  Despite this explanation, RODRIGUEZ continued to detain Plaintiff.  He conducted a search for weapons, and found nothing.  He then requested that Plaintiff consent to a search of his backpack.  Having nothing to hide, Plaintiff agreed.  No weapons or contraband were found.  RODRIGUEZ nonetheless still continued to detain Plaintiff, purportedly to determine whether Plaintiff was under the influence of a controlled substance.  He examined the size of Plaintiff's pupils and also noted that Plaintiff's pulse and temperature were somewhat elevated.  He did not ask Plaintiff any questions as to why his pulse and temperature might be slightly raised.

16.  Despite having no real objective evidence that Plaintiff was under the influence of any controlled substance, and no indication that he posed a danger to

himself or others, RODRIGUEZ decided to arrest Plaintiff and transport him to Dominican Hospital, on the advice of PERRY, who was also on the scene, acting as a field training officer.  PERRY had also viewed Plaintiff's pupils and reported them as significantly smaller than what Rodriquez recorded.  Perhaps for that reason, PERRY suggested (according to his report) that Plaintiff be evaluated in "controlled setting" to "better evaluate [Plaintiff's] objective symptoms."  However, what the officers told Plaintiff was that they wanted to bring to the hospital to test his blood and urine for controlled substances.

17.     When RODRIGUEZ told Plaintiff he was arresting him, he handcuffed Plaintiff and vigorously frisked him.  Plaintiff complained that RODRIGUEZ was hurting his left wrist.  RODRIGUEZ's response was to tighten the handcuffs until they could not move up or down Plaintiff's arms at all.  Many times throughout the rest of this ordeal, Plaintiff explained that the handcuffs were injuring his wrist, and asked that the officers loosen them.  These requests were completely ignored; throughout the time plaintiff was detained the handcuffs were never loosened.

18.     Plaintiff was brought by the officers to Dominican Hospital through the emergency  room entrance.  All the people in the emergency room were watching in surprise as Plaintiff was led in, handcuffed.  Several individuals who had worked in the emergency room for many years later told Plaintiff that they had never seen anyone brought in to the emergency room in handcuffs like that.

19.     Plaintiff, who by this point was outraged at this continuing abuse of his rights, asked that a hospital representative accompany him to observe the treatment he was being accorded.  The officers refused.  They brought him to a room and handcuffed him to the bed.  Despite Plaintiff's complaints about his left wrist, the officers kept one handcuff tightly secured to that wrist, with the other cuff attached to one of the bedposts.  Knowing that he was not under the influence of any drugs, Plaintiff agreed to have his blood and urine tested.  However, when the officers saw how willing Plaintiff was to take these tests, they reversed course and decided not to

1   administer the blood and urine tests.  Instead, RODRIGUEZ again viewed Plaintiff's

2   pupils.  This time he recorded them as being the same size PERRY had previously

3   recorded them as.  PERRY then recommended to RODRIGUEZ that the evidence did

4   not support the conclusion that Plaintiff was under the influence of a controlled

5   substance, and so RODRIGUEZ released Plaintiff.

6       20.    Before they released him, RODRIGUEZ began filling out a Certificate of

7   Release form.  At this point, Plaintiff overheard RODRIGUEZ ask PERRY for help in

8   filling the form out, stating that he had never filled one out before.

9       21.    After removing the handcuffs, the officers took several pictures of Plaintiff

10  in response to his statement that he was considering legal action in response to their

11  violations of his rights.  RODRIGUEZ told him to smile for the picture, and when

12  Plaintiff failed to do so, RODRIGUEZ moved close to Plaintiff's face and threatened to

13  put the handcuffs on again.  When Plaintiff continued to refuse to smile, RODRIGUEZ

14  grabbed his arm as if to put the handcuffs back on.  Plaintiff then agreed and produced

15  a sickly smile for the picture.

16      22.    After the officers released him, Plaintiff stayed at Dominican Hospital in

17  order to proceed with the blood and urine examinations.  The tests came out negative

18  for all controlled substances, as well as alcohol.

19      23.    Plaintiff's unlawful detention caused him significant embarrassment,

20  mental anguish, and emotional distress.  He has been diagnosed with post traumatic

21  stress disorder and depression as a result of this incident and is undergoing therapy in

22  order to cope with these disorders.

23      24.    The officers' use of excessive force has caused significant injury to

24  Plaintiff's left wrist.  He has been diagnosed with left wrist extensor tenosynovitis as a

25  result of the handcuffs being tightened so severely.  This injury continues to cause

26  Plaintiff considerable pain and makes it difficult for Plaintiff—who is lefthanded—to do

27  common tasks such as writing, driving, typing, turning door knobs, opening jars, eating,

28  etc., as well as preventing him from enjoying activities such as rock climbing, weight

1   lifting and mountain biking.

2       25.     In doing the wrongful acts alleged herein, defendants RODRIGUEZ and

3   PERRY acted without a reasonable belief or suspicion that Plaintiff was under the

4   influence of a controlled substance, or was otherwise lawfully subject to detention or

5   arrest for any reason whatsoever.

6       26.     Plaintiff is informed and believes, and thereon alleges, that the conduct of

7   RODRIGUEZ and PERRY described above was done wilfully, wantonly, maliciously,

8   and oppressively with an intent to violate the rights of plaintiff and with reckless

9   disregard for the rights of plaintiff. Said conduct of defendants deprived plaintiff of his

10  constitutionally protected rights and was done with evil motive or intent, or with

11  reckless or callous indifference to the rights of plaintiff.

12      27.     On or about July 3, 2002, plaintiff presented a timely claim for damages to

13  the City Council of the City of Santa Cruz pursuant to the California Tort Claims Act.

14  The City Council rejected the claim on October 23, 2002.

**First Claim for Relief**
**(Deprivation of Rights Under Color of State Law)**

17      28.     Plaintiff realleges and incorporates by reference each allegation of

18  paragraphs 1 through 27.

19      29.     By reason of the conduct of defendants described above, plaintiff was

20  deprived of the rights, privileges, and immunities secured to him by the Constitution of

21  the United States and laws enacted thereunder in that the seizure, detention, arrest,

22  and handcuffing of plaintiff amounted to an arbitrary intrusion by defendants into the

23  security of his privacy and person, and were not authorized by law, and in that the

24  contacts on his person and restrictions of his movements deprived him of liberty

25  without due process of law.

**Second Claim for Relief**
**(Deprivation of Liberty Without Due Process)**

30.     Plaintiff realleges and incorporates by reference each allegation of paragraphs 1 through 27.

31.     The defendants deprived plaintiff of liberty without due process of law in violation of the Fourteenth Amendment to the United States Constitution.

**Third Claim for Relief**
**(Violation of Article I, § 7 of the California Constitution)**

32.     Plaintiff realleges and incorporates by reference each allegation of paragraphs 1 through 27.

33.     By engaging in the conduct described above, defendants deprived plaintiff of liberty without due process of law in violation of Article I, § 7 of the California Constitution.

**Fourth Claim for Relief**
**(State Law — False Imprisonment)**

34.     Plaintiff realleges and incorporates by reference each allegation of paragraphs 1 through 27.

35.     Said conduct by defendants constituted an imprisonment of plaintiff that was false and without lawful justification.

**Fifth Claim for Relief**
**(State Law — Assault and Battery)**

36.     Plaintiff realleges and incorporates by reference each allegation of paragraphs 1 through 27.

37.     Said conduct by defendants constituted an assault and battery on the person of plaintiff that was wrongful and without lawful justification.

1

**Sixth Claim for Relief**
**(State Law — Negligent Infliction of Emotional Distress)**

2

3      38.      Plaintiff realleges and incorporates by reference each allegation of

4    paragraphs 1 through 27.

5      39.      By said conduct, defendants negligently and wrongfully inflicted emotional

6    distress on plaintiff.

7

8

**Seventh Claim for Relief**
**(State Law — Intentional Infliction of Emotional Distress)**

9

10      40.      Plaintiff realleges and incorporates by reference each allegation of

11    paragraphs 1 through 27.

12      41.      By said conduct, defendants intentionally and wrongfully inflicted

13    emotional distress on plaintiff.

14                                      **Prayers for Relief**

15      WHEREFORE, plaintiffs prays for the following relief:

16      1. For compensatory damages against defendants in an amount according to

17    proof.

18      2.  For punitive damages against defendants in an amount according to proof.

19      3.  For costs and reasonable attorney's fees pursuant to 42 U.S.C. § 1988.

20      4.  For such further relief as the court deems proper.

21

22    Dated: November __, 2002                    Respectfully submitted,

23

24                                      _____

25                                      DOUGLAS C. KANE
                                        Counsel for Plaintiff
26                                      121 Jewell Street
                                        Santa Cruz, CA 95060

27

28

9

1

**JURY DEMAND**

2        Plaintiff hereby demands trial by jury.

3

4    Dated: November ___, 2002

5                                                        _____
                                                         DOUGLAS C. KANE
6                                                        Counsel for Plaintiff
                                                         121 Jewell Street
                                                         Santa Cruz, CA 95060

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT FOR DAMAGES