DOUGLAS C. KANE, S.B. NO. 198934
LAW OFFICE OF DOUGLAS KANE
**121 Jewell Street**
**Santa Cruz, CA 95060**
**(831) 459-8000**

**Attorney for Plaintiff KEVIN HALPERN**

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

| | |
|---|---|
| **KEVIN HALPERN,**<br><br>    Plaintiff,<br><br>    v.<br><br>**CITY OF SANTA CRUZ, ABRAHAM RODRIGUEZ, DAVID PERRY, and DOES 1 through 20, inclusive**,<br><br>    Defendants. | **CASE NO. C 02-05557 JW**<br><br>**DECLARATION OF PLAINTIFF KEVIN HALPERN IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OR IN THE ALTERNATIVE, FOR SUMMARY ADJUDICATION**<br><br>**Date: March 22, 2004**<br>**Time: 8:30 a.m.**<br>**Dept.: 8** |

I, KEVIN HALPERN, declare and state as follows:

1.   I am the plaintiff in the above described action.  The facts set forth herein are stated on my own personal knowledge and if called as a witness, I could and would competently testify to the facts contained herein under oath.

2.   I am a 28-year-old white male.  Other than the incident that serves the basis for this claim, I have never been arrested.  I am a graduate of an Ivy League university and has never been involved in any way with any kind of substance abuse.

3.   Early in the morning on January 8, 2002, I was scheduled to leave on a flight to New York from San Jose International Airport, so I could visit my family there. A friend of mine who was going to drive him to the airport was to pick me up at my girlfriend's house.  Unfortunately, my girlfriend decided to break up with me at this

1  time. I therefore tried to contact my friend who was going to drive me to the airport on
2  my friend's cell phone, but my friend did not answer the phone. After several attempts
3  to call him, my ex-girlfriend and I agreed that I should start walking towards my friend's
4  house because she wanted to go to sleep. After I left, because of the cold weather, I
5  jogged occasionally, but I had a backpack with contents that included three heavy
6  communication technology books that prevented me from jogging the full way to my
7  friend's house. Therefore, my temperature and pulse were somewhat elevated. I
8  reached the gas station at the corner of Soquel and Frederick and again called my
9  friend to pick me up.

10      4.    I then saw a police car approach and park in the gas station. Two officers
11  got out and began walking towards me, so I approached the first officer (RODRIGUEZ)
12  to explain why I was waiting at the intersection. I also informed the officer that I was
13  upset because my girlfriend had just broken up with me.

14      5.    Despite this explanation, RODRIGUEZ continued to detain me. He
15  conducted a search for weapons, and found nothing. He then requested that I consent
16  to a search of my backpack. Having nothing to hide, I agreed. No weapons or
17  contraband were found. RODRIGUEZ nonetheless still continued to detain me,
18  purportedly to determine whether I was under the influence of a controlled substance.
19  He did not ask me any questions as to why my pulse and temperature might be slightly
20  raised. He did not ask why I was waiting at the corner. He did not ask me any
21  questions about my girlfriend and I breaking up, or why I might seem agitated or upset.
22  He did not ask me why I was "flailing my arms" or moving them in any way, or why I
23  was not wearing a heavy jacket. He never told me that I did not have to agree to a
24  search, or that I was free to leave. At no time was my behavior "erratic," nor did my
25  speech "fluctuate."

26      6.    RODRIGUEZ asked me to tilt my head back and count out loud to 30. I
27  followed his directions and did what he asked me to do. He then shined a flashlight
28  into my eyes, apparently to measure my pupils, and took my pulse. PERRY also

Declaration of Plaintiff Kevin Halpern in Opposition to Summary Judgment Motion    Page 2
Case No. C 02-05557 JW

shined a flashlight in my eyes.

7. RODRIGUEZ then told me he was arresting me, and he handcuffed me and vigorously frisked him. I complained that RODRIGUEZ was hurting my left wrist. RODRIGUEZ's response was to tighten the handcuffs until they could not move up or down my arms at all. Many times throughout the rest of this ordeal, I explained that the handcuffs were injuring his wrist, and asked that the officers loosen them. These requests were completely ignored; throughout the time I was detained the handcuffs were never loosened.

8. I was brought by the officers to Dominican Hospital through the emergency room entrance. All the people in the emergency room were watching in surprise as I was led in, handcuffed. Several individuals who had worked in the emergency room for many years later told me that they had never seen anyone brought in to the emergency room in handcuffs like that.

9. I asked that a hospital representative accompany him to observe the treatment I was being accorded. The officers refused. They brought me to a room and handcuffed me to the bed. Despite my complaints about my left wrist, the officers kept one handcuff tightly secured to that wrist, with the other cuff attached to one of the bedposts. RODRIGUEZ and PERRY again viewed my pupils. Then RODRIGUEZ told me that they were not going to give me the urine and drug tests but were going to release me instead.

10. Before they released me, RODRIGUEZ began filling out a Certificate of Release form. At this point, overheard RODRIGUEZ ask PERRY for help in filling the form out, stating that he had never filled one out before.

11. After removing the handcuffs, the officers took several pictures of me in response to my statement that I was considering legal action in response to their violations of my rights. RODRIGUEZ told me to smile for the picture, and when I failed to do so, RODRIGUEZ moved close to my face and threatened to put the handcuffs on again. When I continued to refuse to smile, RODRIGUEZ grabbed my arm as if to put

the handcuffs back on.  I then agreed and produced a sickly smile for the picture.

12. After the officers released me, I stayed at Dominican Hospital in order to proceed with the blood and urine examinations.  The tests came out negative for all controlled substances, as well as alcohol.  A true and correct copy of the results of these tests are attached hereto as Exhibit A.

13. My unlawful detention caused me significant embarrassment, mental anguish, and emotional distress.  I have been diagnosed with post traumatic stress disorder and depression as a result of this incident and have undergone therapy in order to cope with these disorders.

14. The officers' use of excessive force has caused significant injury to my left wrist.  I have been diagnosed with left wrist extensor tenosynovitis as a result of the handcuffs being tightened so severely.  This injury continues to cause me considerable pain and makes it difficult for me to do common tasks such as writing, driving, typing, turning door knobs, opening jars, eating, etc., as well as preventing him from enjoying activities such as rock climbing, weight lifting and mountain biking.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct and that this declaration was executed on this 26th day of February, 2004, at Santa Cruz, California.

/s/
_____
KEVIN HALPERN